UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANTHONY ROBERTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 22-CV-12108-AK |
| v. | ) | |
| | ) | |
| CAPTAIN STANLEY THEMORA and | ) | |
| LIEUTENANT RICHARD BLOOM, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**ANGEL KELLEY, D.J.**

Plaintiff Anthony Robertson, a state prisoner, brings this action under 42 U.S.C. § 1983, alleging that Defendants Captain Stanley Themora and Lieutenant Richard Bloom issued supervisory directives that resulted in the "unwanton infliction of physical pain and suffering." [Dkt. 2 at 3]. For the reasons that follow, Defendants' Motion for Summary Judgment (the "Motion") [Dkt. 79] is **GRANTED**.

**I.   BACKGROUND**

The facts are drawn from the summary judgment record, are undisputed unless otherwise indicated, and are presented in the light most favorable to Robertson as the nonmoving party.

**A.   Factual Background**

From November 23, 2018 through September 9, 2022, Robertson was a pre-trial detainee committed to the Suffolk County Sheriff's Department at the Nashua Street Jail ("Nashua") in Boston. Captain Themora is regularly assigned as a shift commander at Nashua and typically

1

supervises approximately forty-five to fifty officers and roughly 300 detainees. Lieutenant Bloom also serves at Nashua.

On July 20, 2022, Robertson injured his left leg and foot during recreation at Nashua and underwent surgery at Massachusetts General Hospital on July 22, 2022. The surgery required staples in his foot and ankle area, and left him using bilateral crutches for mobility. Upon his return, Nashua medical staff completed special needs documentation identifying crutches and housing accommodations and notified custody personnel, including the Defendants.

On August 20, 2022, while housed in restrictive housing, Robertson reports that his rehabilitation had progressed and that his pain was minimal. Lieutenant Bloom instructed housing control and unit officers by telephone to apply modified restraints on Robertson to bring him in and out of his cell for recreation. Unit officers implemented the instruction by placing a waist chain on Robertson, omitting leg irons, and affixing handcuffs through his crutches with an extra set of handcuffs to permit crutch use. Defendants represent that the modified waist chain/handcuff configuration reflects training and facility protocol for accommodating inmates with mobility limitations, and that custody personnel routinely modify restraints where leg irons are medically inappropriate. Robertson contends that such restraints had not been used earlier after his surgery and that the Defendants' directives produced a makeshift configuration that caused him serious injury.

Robertson alleges that the restraints, which were affixed to his crutches, caused him to fall, reopen his surgical wound, and require extended rehabilitation. Defendants dispute any causal link between the August 20 fall and subsequent postoperative complications.

**B.    Procedural History**

Robertson filed a pro se complaint on November 30, 2022, alleging deliberate

indifference and cruel and unusual punishment under 42 U.S.C. § 1983. He alleges that he filed an internal grievance at Nashua but was transferred to a different facility before receiving a response. Defendants answered and asserted, among other defenses, failure to state an Eighth Amendment claim and qualified immunity.

On July 1, 2025, Defendants filed the Motion, arguing: (1) the undisputed material facts show no Eighth Amendment violation because the supervisory directives were consistent with medical notification, training, and institutional policy; and (2) they are entitled to qualified immunity. [Dkt. 79]. Robertson opposes summary judgment, contending that triable issues exist as to supervisory deliberate indifference, causation, and qualified immunity. [Dkt. 84].

## II.    LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmovant, shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The court determines whether: (1) a factual dispute exists; (2) that the dispute is genuine so that a reasonable factfinder could return a verdict for the nonmovant; and (3) the disputed fact is material under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying record evidence demonstrating the absence of a genuine issue of material fact, either by negating an essential element of the nonmovant's claim or by showing a lack of evidence to support that element. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant satisfies that burden, the nonmovant must produce specific, admissible evidence creating a genuine factual dispute; conclusory allegations, speculation, or unsupported inference will not defeat summary judgment. See Mendes v. Medtronic, Inc., 18 F.3d 13, 15 (1st Cir. 1994); Rockwood v. SKF

3

USA Inc., 687 F.3d 1, 9 (1st Cir. 2012).

**III.   DISCUSSION**

The Defendants seek summary judgment on two independent grounds.  The Court addresses each in turn.

    **A.   Eighth Amendment Deliberate Indifference**

Robertson alleges that Defendants ordered waist chains and handcuffs affixed through his crutches, foreseeably causing him to fall and re-injure his surgical site.  An Eighth Amendment claim for denial of medical care requires both an objective and a subjective element: an objectively, sufficiently serious deprivation and a defendant's subjective, knowing disregard of an excessive risk to inmate health or safety.  See Estelle v. Gamble, 429 U.S. 97, 104–06 (1976); Farmer v. Brennan, 511 U.S. 825, 834–37 (1994).  The objective element is undisputed, as Defendants knew Robertson had recent ankle surgery and used crutches, and Defendants exercised supervisory authority over movement and restraint decisions in restrictive housing. [Defs.' Concise Statement of Facts ¶¶ 31–38, 44–48].  The dispositive question is the subjective element: whether the supervisors knew of, or were willfully blind to, an excessive risk and consciously disregarded.  See Farmer, 511 U.S. at 837–40.  Mere negligence, medical malpractice, or disagreement about appropriate care is insufficient.  See Estelle, 429 U.S. at 106; Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497–98 (1st Cir. 2011).

Supervisory liability requires personal participation, direction, or authorization of the unconstitutional conduct, actual knowledge of facts giving rise to a substantial risk, and failure to take reasonable remedial steps.  Gaudreault v. Municipality of Salem, 923 F.2d 203, 208–09 (1st Cir. 1990); Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).  A single supervisory order can give rise to liability only if the order itself was objectively unlawful and issued with

4

the requisite culpability. Gaudreault, 923 F.2d at 208–09. Reasonable security judgments that balance penological and medical concerns do not constitute deliberate indifference. Sosa v. Mass. Dep't of Corr., 80 F.4th 15, 28-29 (1st Cir. 2023). Evidence that restraints were improvised in disregard of known medical restrictions, that supervisors knew the restraint posed an obvious and substantial risk, or that officers acted with callous or reckless indifference may create a triable issue. See id.; Farmer, 511 U.S. at 847; Leavitt, 645F.3d at 498–501.

      Here, accepting the objective element, the undisputed record does not establish the required subjective component. Three points are dispositive. First, medical staff documented Robertson's postoperative condition and need for crutches and notified custody, but clinicians did not issue a categorical prohibition on restraints. Second, facility policy contemplates tailoring restraints when medical conditions make standard leg irons inappropriate, and custody staff are trained to use a waist chain with supplemental handcuffs to permit crutch use. Policy S532 therefore authorizes alternate measures and leaves supervisors discretion to reconcile mobility and security needs, an assessment courts treat as a penological judgment. See Sosa, 80 F.4th at 28. Moreover, the security context of restrictive housing (limited out-of-cell time, keep-separate requirements, and the need occasionally to bring multiple inmates out together) further supports the conclusion that the Defendants' directive was a policy-compliant, security-focused accommodation rather than an objectively unlawful order. Third, neither Defendant physically applied restraints; each relayed an instruction that housing control and unit officers implemented consistent with training and protocol. Nonmedical supervisors are ordinarily entitled to rely on clinician judgments and facility procedures absent reason to believe clinicians are failing to treat the inmate or that the chosen procedure is manifestly unsafe. Snell v. Neville, 998 F.3d 474, 498 (1st Cir. 2021) (citing Matthews v. Pa. Dept. of Corr., 613 F.

App'x 163, 170 (3d Cir. 2015)); Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  It is also worth noting that the modified restraint here is materially analogous to the custom restraint the First Circuit described as a reasonable balancing of medical needs and security concerns.  See Sosa, 80 F.4th at 28.

Robertson contends the telephone order alone establishes supervisory liability and argues that the foreseeability of his fall establishes the subjective element.  Foreseeability and custodial duty do not substitute for Farmer's subjective standard.  Robertson must show that Defendants knew of, or were willfully blind to, an excessive risk and consciously disregarded it.  See Farmer, 511 U.S. at 837–40.  Evidence that prior escorts occurred without identical restraints does not, standing alone, establish deliberate indifference because shifting security demands can justify different restraint decisions on different days.  Likewise, Robertson's characterization of the configuration as "makeshift" is insufficient without admissible evidence that the modification was objectively dangerous and that supervisors knew and disregarded that danger.  See Sosa, 80 F.4th at 28; Leavitt, 645 F.3d at 498–501.

Taken together, the undisputed record—medical notifications that did not prohibit restraints, training prescribing the challenged modification, the supervisors' nonphysical role in issuing the instruction, and the operational needs of segregation housing—does not permit a reasonable juror to infer that Captain Themora or Lieutenant Bloom acted with the subjective deliberate indifference mental state required by Farmer and First Circuit precedent.  The evidence supports, at most, negligence or a disputed judgment call, not the conscious, culpable state of mind required for an Eighth Amendment violation.  See Estelle, 429 U.S. at 106; Manarite v. City of Springfield, 957 F.2d 953,956 (1st Cir. 1992).  "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of

6

unnecessary pain." Estelle v. Gamble, 429 U.S. at 105. The supervisory deliberate indifference claim therefore fails as a matter of law.

### B. Qualified Immunity

Qualified immunity shields government officials from damages liability for discretionary actions unless: (1) the official violated a statutory or constitutional right; and (2) that right was clearly established at the time of the challenged conduct such that a reasonable official would have known the conduct was unlawful. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pearson v. Callahan, 555 U.S. 223, 232–33 (2009). The inquiry is fact-specific and requires that existing precedent place the constitutional question "beyond debate" in the particular context confronted by the official. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). General statements of constitutional principle do not suffice to defeat immunity. Id. at 742.

Assuming, arguendo, a constitutional violation occurred, Defendants are, nevertheless, entitled to qualified immunity. Robertson contends qualified immunity is unavailable because Defendants acted with reckless or callous indifference. The dispositive question is whether precedent would have given a reasonable supervisor in Captain Themora's and Lieutenant Bloom's position fair notice that ordering a training-compliant, modified waist-chain/handcuff restraint for an inmate using crutches in segregation violated the Constitution. The undisputed record shows that clinicians notified custody of Robertson's need for crutches but did not issue a categorical restriction precluding restraints, and that the challenged modification conformed to facility training for accommodating crutch use while preserving security. Under these circumstances, a reasonable supervisor could have believed the directive lawful. The First Circuit has recognized that carefully tailored restraints intended to accommodate medical needs while maintaining security may be constitutionally permissible. Sosa, 80 F.4th at 28 (holding

prison officials who rear-cuffed plaintiff with custom-made double cuffs-length handcuffs acted reasonably by accommodating plaintiff's medical needs and maintaining safety and security). Where reasonable officials could differ about the lawfulness of the challenged conduct, qualified immunity ordinarily applies.  Pearson, 555 U.S. at 244–45; Ashcroft, 563 U.S. at 742–43. Because Robertson points to no controlling precedent that would have put Defendants on clear notice that the supervisory directive here was unlawful, qualified immunity protects Captain Themora and Lieutenant Bloom from damages liability.

### IV.    CONCLUSION

For the foregoing reasons, the contested facts Robertson cites are either not genuinely disputed in a manner material to the legal issues or, even if credited, do not establish the subjective deliberate indifference standard or overcome qualified immunity.  Defendants' Motion for Summary Judgment [Dkt. 79] is **GRANTED**.  The Clerk shall enter judgment for the Defendants and close the case.

**SO ORDERED**.

Dated: October 31, 2025                                                        /s/ Angel Kelley
                                                                                    Hon. Angel Kelley
                                                                                    United States District Judge